Good morning. Good morning, Your Honor. My name is Paul Schraff. I represent the petitioner, John Mannering. I think unlike some of the cases that I've listened to argue this morning, I think this case is fairly focused and I think the issue is clear. And that is whether the Benefits Review Board incorrectly construed the established law of the Ninth Circuit and instead relied upon overruled law or law that has been superseded by the changes in the statute We submit to the court that the Hurston decision, particularly Hurston 2, which was McCrae Construction v. the Director in 1999, is governing in this case. In Hurston 2, the issue specifically was what does harbor worker mean in the context of someone who does pier construction. And the Hurston court said harbor worker, because of the constraints established in the Herb's Welding case, means someone engaged in loading, unloading, repairing, or building a vessel. And they pointed out that someone doing pier construction is not covered by that. That's the pier that's the oil pier, if I'm remembering. That's correct, Your Honor. Okay. That doesn't have ships coming to it. The so-called shipless pier. That's correct, Your Honor. Okay. So we have a ship full pier or whatever. Or with ship pier. Yeah, with ship pier. Although we submit, Your Honor, that that is not a distinction with a difference. The Hurston case and, frankly, all of the cases which have dealt with the situs and status issues have made very clear that they are two separate and independent issues that need to be decided. And we cannot have situs determine status. Hurston court said that. The Herb's Welding touched on it also. In reaching that decision, the Hurston court did not overlook anything. The same Director Memo 58, which was attached in this case, was attached to the Hurston appeal. And it wasn't accepted then by the Ninth Circuit. They also said there was no deference that they needed to give to the Director on the interpretation of what is a harbor worker. There was also the same effort, as you can tell from the discussion in Hurston, to try to separate harbor worker from the limitations imposed by Herb's Welding. And the Ninth Circuit said, no, Herb's Welding is controlling here. In the Benefit Review Board's decision, they tried to rely on Hawkins and to say that Hawkins was the applicable authority here and it was not overruled in Hurston 2. Well, that's true. It wasn't expressly mentioned in Hurston 2. But this Court in its Coloma decision, where it acknowledged that the Weyerhaeuser theory and test had been reversed by Herb's Welding, said, our duty of obedience to the Supreme Court is not conditioned on an explicit reversal by name of prior inconsistent Ninth Circuit authority. And the same certainly applies with respect to this case. To the extent that there is conflicting authority from the Benefit Review Board decisions, it is clearly subject to and overruled by the decisions of the Ninth Circuit. Whether or not you go through what I think would be an almost impossible effort of trying to locate every decision that might be overruled by any decision the Court makes. We submit that the Hurston 2 decision is not limited to the shipless pier any more than Herb's Welding was limited only to welders or only to Herb's welders. The courts have said that status is an occupation. It is not a geographic concept. It focuses solely, and it's the Court's word, solely on what they are doing and never on where they are working. The Hurston 2 Court referred to the Director's argument about the shipless pier, not to say that that was creating an exception, but to say that that argument had no force in the case. And I submit that you cannot reverse that and say because they said this doesn't apply in this case that somehow they created an exception that says it actually is applicable in some other case. I think if you look at the 72 amendments, it's very clear that the nature of the pier is not the determining factor. The 1972 amendments to the Act were intended to provide protection for people who were over the water and then walked onto the land. It was intended to protect those people when they moved out of what was then the navigable water site into the broader site as established by the 72 amendments. It was not intended to try and embrace land-based workers simply because they were working near the water. Prior to the 72 amendments, land-based construction workers were not covered. The intent of the 72 amendments was not to cover land-based workers. And Hurston 2 said that. More than simply the law, Your Honor, I just want to briefly remind the Court about the facts in this case. Hurston said that the measure is disemployment of this employee. We have Mr. Malma who was digging a trench. It doesn't apply to what his employer, Mr. Mannering, may have been doing. It certainly doesn't apply and cannot be extrapolated onto what Healy Tibbetts Builders was doing. What the Court said is you have to look at this employee. This Court had said the same thing in the Weyerhaeuser case where it had said, and it was not the part that was overruled, but the part of the Weyerhaeuser case that said you have to look at this employee. When we changed, when the law was changed in 72, it changed it from being employer-focused to being employee-focused. Did you want to, our courtroom deputy said you wanted to reserve time for your colleague. I did, Your Honor. I just wanted to end with this one point. We really think that this is a reach from a leap to try to extend status to Mr. Malma. There is no cargo that will ever flow through his trench. It ran parallel to the water. And this case, I think, Your Honor, is ruled by Hurston, and I think that the Court should reverse the Court's decision. Thank you, Judge. Thank you very much, Mr. Schrapp. We have two respondents here. Good morning, Your Honors. My name is Barry Joiner, and I am here on behalf of the Director of the Office of Workers' Compensation Programs. Joiner, you're going to take five minutes. That's correct, Your Honor. Mr. Malma was a maritime employee under the Longshore Act because he was a harbor worker. He was a harbor worker because he was involved in an essential component of using a pier that was used and will in the future be used by ships. How far did that extend? I mean, he was totally on land parallel to the shore. He was on land. That's correct, Your Honor. However, the 1972 amendments, of course, extended coverage of the Longshore Act onto adjoining areas of land where people engage in maritime employment. And what he was doing was engaging in what the President of Healy Tibbets has specifically stated that it was an essential component of the project to replace and rebuild the submarine berthing wharfs at Pearl Harbor. He was engaged in the work that provided the utilities, particularly the electrical utilities and the communication lines for the piers. The petitioners rely strongly on the Supreme Court's decision in Herb's Welding for the proposition that even harbor workers must establish a direct connection to loading and unloading of a vessel in order to establish status under the Longshore Act. That is, I would submit, not a correct reading of Herb's Welding. In Herb's Welding, the court, following its earlier decision in Rodrigue, found that the employee was not covered because he was engaged in oil drilling and oil production, which the court said was not maritime employment. The court was not there faced with the decision trying to encompass what the phrase harbor worker means. Subsequently, to Herb's Welding, in Chesapeake and Ohio v. Schwab, the court specifically indicated that employees who fall within the enumerated terms of Section 2.3 of the Longshore Act, including longshoremen and harbor workers, need not establish the direct connection of their activities to loading or unloading of a vessel. If we're going to write an opinion or going to draw a bright-line rule, what's the rule we should adopt? How do we know who's covered and who isn't? Your Honor, in this case, it's a very simple difference between what happened in Hurston. In this case, there was a direct connection between what he was doing and ships. He was building a pier that would be used for ships. The submarines would come in from their patrols at sea, and they would use these piers for docking whenever they needed to do while they were in port. If you want the bright line, I think that would be it. If the employee is constructing a facility used by a ship, that is a harbor worker. And that is what the director believes. That is the position that was adopted by the Second Circuit in the Fleischman case. The Third Circuit also, in a case called Bundens, has recognized that building docks or piers used by ships is harbor work. The Fourth and Fifth Circuits have also recognized that this sort of work has covered maritime employment, although they have not addressed specifically whether it falls within the definition of harbor worker under the Longshore Act. The Petitioners also make much of the fact that Mr. Maumau's specific activities were not inherently maritime in nature. That is, breaking up old concrete, digging ditches, and pouring new concrete. That, however, is not the test. The test is whether or not his work was directed toward a maritime activity. Here, it clearly was. He was engaged in the activity related to building of a pier. What about the accountant back at Tilly Tibbetts' office? Would that person be a maritime worker? No, Your Honor. I think if the account – certainly you get to a point where there's too attenuated a connection. He might well fall within the exception of the statute for employees who are data entry workers or clerical workers that Congress has set up. Or if his work was somehow, you know, really not related to the actual work being done in building the pier, then he well might not be covered. How about the guy driving the truck to the site? Again, Your Honor, if it's somebody who's driving a truck, you know, it certainly depends on particular facts. If he gets into a traffic accident a mile away from the site. Well, if he's that far away, he well might not be covered because he's not on a maritime situs. But he's on his way to the site. That doesn't matter. He's got to be on the situs in order to be covered. That's an essential requirement. If he's not there at the situs, he is not covered. So if he's there and he's working on the project, that's where we draw the line. If he's there, if he's working on the project, if he does not fall within one of the statutory exceptions, if he is somehow engaged in work which is integral to building the facility that is used by ships, then he is covered. Your Honor, my five minutes are up. Thank you, Mr. Joyner. Counsel for Maumau? To please the Court, my name is Preston Easley. I represent the respondent, Darlette Maumau. And I've come here to solve some of these grave issues facing the Court. We're happy to see you then. And as a starting point for solving these grave issues, I brought the Longshore Act with me. And Longshore Act Section 2 says, When using this Act, the term employee means any person engaged in maritime employment, including any longshoreman or other person engaged in longshore operations and any harbor worker, including a ship repairman, shipbuilder, and shipbreaker. But such term does not include, and it has a whole list of exclusions. So we have enumerated employees. We have excluded employees. And we have harbor workers, which includes, but we go back to Herb's Welding. And Herb's Welding says, By use of the term including, Congress indicated that specifically mentioned occupations are not exclusive. Well, the other interesting one to me is the exclusion in Subsection 3C, which excludes individuals employed by a marina if they're not engaged in the construction, replacement, and expansion of the marina. And by negative implication, if you work your way backwards, it sounds like if you are engaged in the construction or replacement of a marina or something similar to a marina, then you're covered. I mean, it's a kind of backwards way to look at it. But if you're looking at the text. Which letter was the marina? Large C. In other words, if you're working on the ancillary facility, you're excluded unless you're working on the construction aspect of it, which this person was. So by, if you work your way through that, that person also is kind of expressly included. I would agree. I would agree with that, Your Honor. The effects of this case are far-reaching. I have other cases on the Pier 400 mare sealand in L.A. Harbor. And, of course, every time you have somebody hurt building a pier, you get this Hurston defense thrown up in your face. And the defendants take this position that Hurston knocks pier construction out of the Longshore Act. And in Hurston, you've got this case where you have this shipless pier. I think the Ninth Circuit went out of its way to distinguish Hurston from all the other pier cases in the world. The Ninth Circuit said, quote, Mr. Hurston was not working on a pier used to accommodate ships or any sort of shelter or facility for ships, nor does the record establish that he was working in a harbor, which is a place for ships. So I think that the Ninth Circuit went to great lengths to distinguish Hurston from all the other pier cases in the world in a shipless pier situation. I'll also tell you that Herb's Welding, although it had some language, it helped me, where it says, you know, the term including does not exclude everybody else who might be a harbor worker. Herb's Welding was kind of a crazy case where a guy was too close to shore to fall under the Outer Continental Shelf Lands Act, so he fell under state workers' comp. So he tried to morph himself into the Longshore Act by calling this offshore drilling platform a pier and bootleg himself back into the Longshore Act. So it's a real hopscotch case, which is certainly different than other cases. The modern trend has certainly been to include pier construction workers in the Longshore Act. Pittman, Fourth Circuit, 1994, welder on pier pipelines. Fleshman, Second Circuit, 1998, pile driver constructing piers was covered. He slipped and fell from a bulkhead on a canal. You know that this Mau-Mau, he was, I like to point this out, what Mau-Mau is doing. You know, he's demolishing the old conduit for the electricity. He's helping them put in a new conduit. He's landing a new conduit box from a floating crane onto the site. He's operating this earth-moving equipment that's demolishing this old conduit. This accident happened about 20 feet from the water's edge. Situs is not in dispute in this thing. He's also helping out the Healy-Tibbets people on their pile driving by using an earth-moving machine to move the dirt away from the tops of their pilings. And so all this is being done to create these power mounds right at the edge of the dock that provide power to the ship, provide power to the dock lighting, and provide power to the tools that are going to be used to fix the ship. So Mau-Mau had a lot of things going on with the purposes of the work that he was doing, and I think he certainly falls under the definition that I've just read to you out of the long track of what a maritime worker is. Thank you, Mr. Easley. Rebuttal. Good morning, and may it please the Court. My name is Christopher Field, and I represent Healy-Tibbets Builders. I'd like to start my rebuttal by noting that the Court inquired how far shall we extend the act and pointed out that there might be an accountant on the job site, and should we cover that person. According to the director's approach, that is exactly who would be covered, everybody on that site. And we contend, along with Mr. Mannering, that that is at odds with the Supreme Court's precedent and with this circuit's precedent. The pier construction project begins in many instances with a blank parcel of land that may need soil testing or soil boring to determine whether or not piles can be driven. Is the person that goes down to do that soil boring covered under the act? We would argue that under the director's position, that person would be covered. What's wrong with my reading of the exception to the exception in subsection C? There's all people who are harbor workers are included, and then there are some exceptions. And one of the exceptions is people who are working on a marina, except if they are in the construction and repair and replacement business, which suggests, if you back it out, that anybody who is constructing, repairing, or replacing a marina, which is similar to a pier, is covered. And then we don't get into your hypothetical and your parade of potential horribles. Yes, Your Honor. I think that the answer to that question lies in the reason that the statute was amended in 1972. And the reason the statute was amended in 1972, as found by this Court in Hurston I and in Hurston II, was that people were walking in and out of coverage during a workday. And when they used that term, walking in and out of coverage, they were referring to people that were on the navigable waters for part of their day and off the navigable waters for the remainder. Regardless of the purpose, what do we do with the words? Your Honor, I think that the answer to the question of why the act covers somebody that's building a marina. It's not a why. It's a question. Are they covering people who are building, repairing, or replacing marinas or things that are similar to marinas? The act is covering people that are walking in and out of coverage during their workday. Mr. Mau-Mau never walked in and out of coverage during his workday. I can't get an answer to my question. That's really a yes or no question. In just reading the words of the act, should we conclude, based on what we read there, that a person who is engaged in constructing, repairing, or replacing a marina or a structure that is similar to a marina, is that person a covered harbor worker or not? The answer to that question lies in the person's duties, Your Honor. As the Supreme Court has reminded us again and again, and as this circuit has found, the answer to the coverage question is one that's tied to the individual's  If the person that's building a marina is on the water for part of his day and off the water for part of his day, then that person is exactly the type of person, type of employee, that the Supreme Court wanted to avoid being subject to State workers' compensation. So if there are two workers working on the exact same place at the exact same time, and one of them is two feet out into the water and one of them stays on the sand, but they're working otherwise side by side, then one is covered and one isn't, in your view? Your Honor, it depends on the person's duties. And if a person is on the navigable waters performing duties that are essential to the loading and unloading of vessels or the building and repairing of vessels, then that person should be covered throughout his workday, whether he's on the water when injured or not. Okay. Thank you. Anything else? No. I understand. Thank you very much, Mr. Field. Thank you to all counsel. The case is submitted. We'll stand in recess for the day. Judge, can I see you in day for a second, please? The Supreme Court's decision stands adjourned. The court is adjourned. The court is adjourned.
judges: Hall, Silverman, Graber